Case No. 13-4073, Paul Lane v. City of Pickerton, et al. Oral arguments will be 15 minutes in length and 15 minutes to be shared by the witness. Mr. Miller for the call. Please proceed. Good morning, Your Honors, and may it please the Court, my name is John Camillus, appearing on behalf of the plaintiff appellant, Paul Lane. I have asked to reserve three minutes for rebuttal. As a classified civil service employee, Paul Lane had a protected property interest in his continued employment. Among other things, this means that due process requires that he be provided with a timely post-termination appeal. The City of Pickerton provided him with an appeal more than three years after he was terminated. This is constitutionally insufficient. The District Court ruled that he wasn't entitled to that. How do we equate that within this time period? I'm sorry, Your Honor, who ruled? Didn't the first court that heard this, not the Supreme Court, said that he was not entitled to? Well, the Court of Appeals on the mandamus action did not rule that he was not entitled to the hearing. It ruled that he was not entitled to mandamus because he had an adequate state court remedy. The State Court of Appeals felt that instead of filing a mandamus action, he should have appealed the City's decision to deny him the hearing to the Common Pleas Court because under Ohio's administrative proceeding process, after you go to your Civil Service Commission, when you appeal the termination as a classified employee, you can appeal the Civil Service Commission's decision to the Common Pleas Court. So when the Court of Appeals denied Mr. Lane's application for a writ of mandamus, it wasn't saying that he had no right to the Civil Service Appeal. It was saying that the proper way to achieve that Civil Service Appeal would be to appeal the City's decision. What effect does that have on this delay? Well, that's the justification for the delay that the City of Picturington asserts. The City of Picturington admits, because it's factual, there's no way to deny it, that he was not provided with his Civil Service Appeal hearing until more than three years after he was terminated. And the City says that that's justified, that's not an unconstitutional delay, because this state court litigation was proceeding, and that's what caused the delay. Well, under the Malin factors, FDIC v. Malin, there's a Supreme Court case addressing when a delay is constitutionally permissible, and Malin asserts three factors. The first factor is the importance of the private interest. Here the private interest involved is Mr. Lane's employment, and the case law is universal and defendants concede that continued employment and depriving an employee of their livelihood is a critically important private interest. The second factor is the justification offered by the government, and here that goes to Your Honor's question about whether that justifies the delay. In our view, it's clear that it does not, because the delay here is the City unlawfully denying him his appeal, and then fighting a losing battle in state court to enforce that unlawful decision. If that were a justification, then a City could deny every classified employee's appeal, force them to go through state court mandamus proceedings, simply to get the appeal that was their right all along. Every appeal would be delayed by years, because you have a lengthy litigation process, and you were tied up in state court after we unlawfully denied you your appeal. It seems clear to us that that justification of saying, we were in state court fighting to continue our denial of due process to you, is an incredibly weak justification for the delay, and the City has been able to cite no case in the history of due process jurisprudence that finds that type of delay, that type of cause for a delay to be justified. And do you have cases going the other way? Well, there's one, it's Brown v. Bathke, and it's from the 1970s, and it is pre-Loudermill. But that is a case in which a teacher was fired, a female teacher, an unmarried female teacher was fired for becoming pregnant, and she claimed gender discrimination, and she filed suit with the Nebraska Equal Opportunity Commission, that ruled in her favor, and the school district appealed that into the state court system. The state court system ultimately ruled that she did have the right to the civil service appeal that she was denied, ordered the school district to provide her that appeal, and the appeal happened two years after she was terminated. And in Brown v. Bathke, I believe it's an 8th Circuit case, it may be 10th Circuit, it's cited in the briefs, the court said that two-year delay, which was caused by those state court proceedings, was an unconstitutional delay. The third Malin factor is the likelihood that the interim decision was mistaken. The interim decision being the decision to terminate Paul Lane. That is what Paul Lane was trying to appeal to the Pickerington Personnel Appeals Board, the Civil Service Commission, and that interim decision turned out to be mistaken. We now know that the likelihood of an interim decision being mistaken there is 100%. He eventually received his appeal. So when he had his hearing, they reinstated him at a lower position, right? Yes. And did they address the back pay issue? It has not yet been addressed. So, but did they, I understand they didn't award it, but was that something that was within their jurisdiction to address? I tried to address it at the hearing, they refused to let me, the theory being that they should automatically reinstate him with back pay, and if they fail to do that, we have to file another state court mandamus action to force the city to do it. And did you do that? We have not yet done it. The Civil Service Commission's decision is on appeal. The Civil Service Commission's decision reinstating Mr. Lane was appealed to the Common Police Court. Since the briefing in this case, it has been affirmed. The city has now... So the city appealed? The city appealed that decision. You didn't file a cross appeal? We did not file a cross appeal. The Common Police Court affirmed, since the briefing in this case, the Civil Service Commission's decision to reinstate him. And that decision has now been appealed by the city to the state court of appeals. So what would we do? What would you want us to do? Reverse the district court's decision, because the district court did not consider the timeliness element. And it's clear that Mr. Lane's due process rights entitled him to a timely appeal. The district court's opinion, is that not being appealed? That's what this... I'm talking about the federal district court opinion. So there are two proceedings. All right. But what would the district court do then? The federal district court. If you were wrong, what would they do? Overrule the state court? No. The federal district court question is separate. The state court proceedings deal with whether or not he was properly terminated. They don't deal with his due process rights. The federal district court here is charged with ruling on Mr. Lane's Section 1983 claim that his due process rights were violated in part by the failure of the city to give him a timely appeal. So that is your timely post-termination appeal issue? That is correct. Is that the only due process issue that you have?  We have another very important due process issue, Your Honor. And that is pre-termination due process violations. The city's process when they terminated Paul Lane, obviously under Loudermill, a classified employee has rights to pre-termination proceedings and due process and post-termination due process in the form of a civil service appeal. We argue that Mr. Lane's due process rights were violated not only by the failure to provide him a timely appeal post-termination, but by the process that was provided to him pre-termination. And the district court granted a summary judgment for the defendants on the grounds that that claim was not properly pled. And what do you rely on in your complaint to show that it was properly pled? Sure, Your Honor. As background, the Cummings case and the Bornhurst case from this court are what guides the investigation into whether the complaint properly asserts claim. And the under Cummings and Bornhurst, we think it's clear that the complaint here is at least ambiguous. And what I rely on are primarily, I would say, three things. When the complaint lists its due process cause of action, it states deprivations plural of due process, deprivations plural of due process, which indicates that it's not simply the one deprivation of failing to provide a timely appeal, but multiple deprivations. The second thing I would point to is paragraph 37 of the complaint. There it's alleged that defendants knew that the charges against Mr. Lane were unsupported or insufficient to justify his termination. Why that speaks to pre-deprivation due process issues is because part of our argument on pre-deprivation due process is that they claim to have terminated him only for these offensive images that were found on his computer, but in reality there were sexual harassment concerns that formed the basis of Chief Taylor's decision to terminate him, but he never provided Mr. Lane any notice of. But doesn't Chief Taylor say it was just the pornography that he terminated? He says that in his deposition in this case, but there's substantial record evidence to refute it. For one thing, he admits that it would have been improper to terminate Mr. Lane only for 30 arguably offensive images found four years previously, and that's all they actually had in terms of the pornography that was found on Mr. Lane's computer. In Mr. Lane's termination memo that Chief Taylor wrote, he said not only the issue about pornographic images, but he said Paul Lane has created a hostile working environment. That's in the termination memo sent from Chief Taylor to Linda Fersh, the personnel director. Additionally, in trying to deny Mr. Lane unemployment compensation from the state, Chief Taylor wrote the state a memo that said that part of the basis for the termination was sexual harassment by Paul Lane, but he was never notified of those charges and never given his Loudermill pre-deprivation rights to address them. What did his termination letter say was the cause of his termination? I don't know off the top of my head. There's a termination memo from November 2, 2009. Is that a memo internal? It's an internal memo. Then there's a November 5, 2009 letter to Paul Lane. I have it on my laptop that I can fire up while the defense is arguing and tell you. I can't tell you off the top of my head. I think it says nothing. I think it says you're terminated as of today, but I couldn't swear to that. One question that I have is assume for the moment that you lose on the timely post-termination due process issue, just assume that, and assume that you were denied pre-termination notice. What would be your remedy? What would be the remedy? What relief could you get? In federal court, in the 1983 case, it's a due process violation. In this case, there's a strong argument based on a case from this court that Mr. Lane is entitled to back pay until he receives the due process that he was always required. What I'm assuming, and this is a hypothetical, I understand totally. I'm assuming that somebody gets actual proper post-termination hearing. Yes. But was denied a pre-termination due process, whether it's notice or an opportunity to be heard. What kind of remedy should a federal court give under those circumstances? The finding would be that it still is a due process violation. The remedy might be simply nominal damages for the constitutional infraction, but it would be the case that when the Civil Service Commission on the appeal, on the adequate Loudermill post-deprivation appeal, reinstates the plaintiff, that the back pay award differs from the back pay award that the plaintiff would be entitled to under federal due process law. So there might be additional damages. I know your time is up, but one question that I had in looking at the complaint. The complaint refers twice to the settlement of the first federal action. What is that referring to? I have no idea. I did not represent Mr. Lane when the complaint was filed. Okay, I just was worried that I was missing something fundamental. You're not missing anything. I suspect that prior counsel had copy-pasted from a different complaint and is referencing something that just doesn't exist. So there's no other federal action that you're aware of? There's no other federal action. Judge Moore, if I could, just before I sit down, there's one other point to the complaint in response to your previous question I think is important to refer to specifically, and that's paragraph 44. Paragraph 44 of the complaint alleges that the defendants failed to follow the principles of notice. Notice is, of course, a fundamental due process requirement. It has no application to the post-termination appeal. The reference to failure to follow the principles of notice is they failed to give him notice of the sexual harassment allegations. They failed to give him notice of the evidence against him because they didn't show him the offensive images that they found on his computer. They failed to give him notice of the pre-disciplinary hearing sufficiently in advance. And it's those issues that are the notice issues in this case. So that's another basis for finding that the complaint is at least ambiguous as to whether it asserts a pre-deprivation due process claim. Thank you. Thank you. Thank you. May it please the court. My name is Frank Scaldone. I represent the city of Piggerington. I will be taking the first 10 minutes of time, and Mr. Landis, who represents the individuals, will be taking the remainder of the time. As an initial matter, I did put my hands on the termination letter. And that letter does not reference sexual harassment. It has to do with violation of the city's personnel policy technology section. And that is at, it can be found at document R41-3, page ID number 1571. Two of the main issues in this case that I believe are dispositive is one, whether plaintiff's prior counsel sufficiently alleged a pre-deprivation due process claim. And second, whether the plaintiff has established a Monell claim against the city of Piggerington with his post-deprivation due process claim. The district court expressly held in reviewing the complaint that there simply, and I'm quoting, there simply is no indication from the complaint that plaintiff intended to pursue a claim based on violations of his due process with respect to pre-deprivation proceedings. What about paragraph 44? Paragraph 44, I'm sorry, what was? The complaint. Paragraph 44 of the complaint says that his termination was not justified in light of the failure of defendants to follow principles of notice and progressive discipline. So principles. You know, based on what is previously said before, maybe it's part of a pickup on a previous complaint filed by the prior counsel. You know, I don't know what that specifically refers to. And it basically under, I think that the overlay here with Iqbal and Twombly is certainly that that would be completely speculation on what that refers to. It certainly doesn't state in light of the other allegations in the complaint anything that would create a claim for pre-deprivation due process violation. After Iqbal and Twombly, can you still have a course of the proceedings kind of thing so that you have the summary judgment materials being developed and everybody is asking questions about pre-deprivation notice? Why isn't that then part of the case? You know, that's an interesting question. I think with Iqbal and Twombly, it makes, the Cummings case that was referred to in the Harris case and the things that kind of come off the Cummings case were decided before Iqbal. So I think that that claim of ambiguity, I think, gets heightened along with the standards that are set forth in Iqbal. And I think it's fair to assume, and this court has said this in previous, that if facts have not been specifically alleged, it's fair to assume that they didn't exist. And in this case, I think the district court's, in a review of the complaint, the district court's review is right on. There simply is no, there's no ambiguity there. It's just a post-deprivation due process claim. In any event, the pre-deprivation, even if you assume that it somehow makes it into this case, the only things, you know, pre-deprivation hearing is not an elaborate proceeding. It requires notice of a charge, explanation of the evidence, and an opportunity to be heard. And all of those things were satisfied. Well, he asked to see what it was that he was being fired for and the guy said, no, I can't show it to you. But it was clear, and there's no requirement that he has to be in this context, that he has to be provided with a pornographic image. And in any event, I'm sorry, go ahead. How are you supposed to respond to that? You don't think you did anything. What are you talking about? Let me see the pictures you're talking about. No, I'm sorry, I can't do that. Perhaps in a different, I mean, perhaps in a different circumstance that may have more impact. Here, he just, it was a flat-out denial. I never looked at any pornography. I never accessed any pornographic websites, which the investigation demonstrated was not correct. That he had, that it was on his password. Couldn't that be an interpretation? Couldn't that be an interpretation as to what is pornography? In this case, I think that while there are some where there's kind of an on-the-edge, this case, based on the images, I don't think that there's... But how did he know what it was that your people found? Again, but he said, I mean, his response would have been, I just, none of this was, I mean, I didn't do it. He just flat-out denied ever receiving any kind of suggested images at all. The plaintiff here knew the seriousness of the charge and it could result in dismissal. And then the city manager, Mike Taylor, didn't believe his explanation, in part on the grounds that he's got, he's saying that somebody else accessed my computer. It's a password-protected computer. And there was some suggestion that he may have received some suggestive photos from his home email at work. In any event, even if the claim makes it into this case, we believe that the pre-deprivation due process was adequate. Turning to the post-deprivation claim, I think that there's a fundamental flaw with the claim in the sense that this is a Monell claim against the city as an entity, an entity claim. And there is no respondeat, it's well-established, there's no respondeat superior liability in these circumstances. But this was the official position of the city, right? This was the law director's, the law director sent the letter stating it. So you're suggesting it's a final policymaker type situation? Yes, this was their position. The Supreme Court of Ohio, and this is in the mandamus proceedings, the Supreme Court of Ohio concluded that the law director did not have the authority to make the decision to deny the hearing. So in this case, I don't believe he can be considered a final policymaker. It's really the board in this circumstance. But they let him, right? But he still doesn't have the, he doesn't have, according to the Supreme Court, he doesn't have the authorization to make that decision to deny the hearing. It can only come from the board. So you're saying that if somebody in municipal government makes a policy decision and everybody follows it, it doesn't count for Monell liability if it's later determined that the person didn't have the authority? I think in this circumstance that that is the case. And this isn't a claim where there are multiple, like there's a policy and practice of the city. You know, I think there was some suggestion that what, you know, well, this isn't a claim where the city is denying classified employees their hearing rights time after time. There's not an example of even one other suggestion of that. And there's certainly no demonstration of any kind of bad faith here. So this is a somewhat unique instance in this circumstance. And again, turning back, we believe that the Supreme Court of Ohio's decision provides pretty solid authority for that argument. Plaintiff argued in the briefing that this claim is waived. That's simply not the case. It was raised in the summary judgment briefing, which is R41 at page 3. And that was our brief in opposition to his summary judgment. So it certainly was before the district court. There's no issues of waiver here. If you got beyond the Monell problem, would you be responsible for a 1983 delay during this 2- or 3-year period? No. If so, what would that mean? What would that mean? You said no. Do you have a case that says you wouldn't? Well, if you can't establish, this is a claim against the, you know, I'm representing the city, the entity. So I guess my answer to your question is no, there would not be a claim. If you cannot establish Monell liability, find a final... I said assuming you got past Monell, would you then be liable for some... Oh, no, I don't believe so. And again, you know, it turns into whether the delay was reasonably justified. And here, mere delay, even the delay in this case, does not equate to a deprivation or a violation of due process. Here, we're talking about the slow... turning the slow process of the mandamus proceedings. It doesn't create a violation of due process. And there's no... I've seen no suggestion in here that the city somehow, other than disagreeing with the classified status, was in any way trying to delay these proceedings in any way, shape, or form. It's simply not in the record. And, I mean, if... But to answer your question, it's a case-by-case determination. There are several cases that we cite in our brief at 25, page 25 of our brief, where you have significant delays as a result of this kind of litigation slowdown, if you will, that don't result in violations of due process. I'd like to... Your red light is on if you want your co-counsel to have time. And I do. Thank you for your consideration. Thank you. Thanks, Your Honor. I'm Mark Landis. I'm here for three individuals who have been named as defendants in this case. I wanted to address, just very briefly, the pre-termination matter. The post-deprivation seems to have nothing to do with my individual clients who were functionaries at that point in the city. The pre-deprivation, I want to make two points that had not yet been made. One is, was it pled? And what is the meaning of this later paragraph about notice and justification? We are... We've not mentioned here that there was another claim in the complaint as well. It was a claim that there was a First Amendment retaliation claim. That was dropped because the First Amendment protected activity was allegedly that Mr. Lane was a friend of somebody else at the office. And they realized that that was not going to work. But, you had allegations in the complaint that were appropriate if you think about the fact that they had to show that there was not a non-discriminatory or non-retaliatory business reason for the firing. And that's my explanation as to why that's in there. All of the other due process allegations are in paragraphs 17 through 22. So you have all of those allegations about post-deprivation due process. And then you have this outlier here that talks about justification including notice. And that's my explanation for what that means in there. Your Honor, as to as to not having the actual items laid out on the table during the pre-deprivation hearing, Chief Taylor understandably didn't want to throw that on the table in front of Linda Fursh and the plaintiff here. And I think that would have been very meaningful and could have in fact caused a due process violation if there was any question about whether or not the images were themselves pornographic. If there was an honest contest as to whether or not those images being on the computer would have violated the policy of the city that would be a very live issue. However, they're in the record and nobody has ever made such a claim. Because of the nature of the plaintiff's reaction to them which was I didn't do it but if I did it it would have been from opening an email it doesn't the actual substance of the complaint confronted with having improper images is well what images are they because I get junk from people and you know spam comes in and so forth and maybe knowing that there are these images would cause that person to say oh yeah I got that awful spam from somebody and I threw it out immediately. I mean there could be defenses that an employee could raise that could resolve the matter at that pre-deprivation hearing. Very fair. It's very fair. Here we had 30 images viewed over the course of two days and evidence on the computer this is what's in front of chief Taylor during the hearing an investigation that indicated that since that time there had been destruction of history where history had been deleted there had been additional software put on by the individual user not the city that would allow private browsing so as not to create further history. And that was all presented to the employee at the pre-deprivation hearing. You know I do not know that. I do not know that. That was in front of the chief as the investigation from the person who watched the computer being viewed. Whether that came out I do not recall off the top of my head whether that's in the record as to whether that was shown to him but he was told these were found, did you violate it. The chief also had the other aspects of this gentleman which impact on the only claim that applies to the individuals alone so I should address it and that's the defamation claim unless you don't want me to. But the chief had his pants off outside the building and went around to go to the bathroom so I didn't have to walk by his doorway. He had his pants off in his office. It was a shared office. Was that presented at the pre-termination hearing? Any of that? No. That was not the basis of the letter either, right? Exactly. Exactly. And counsel has represented it accurately. It indicates that based upon the investigation, his admissions at the hearing, and his lack of response to them to rebut those, that it was found that he violated the policy on viewing pornography. There's no mention at that letter of anything else. And the court limited the allegations on defamation to that letter. Paragraph 35 of the complaint is the only place in which there's an allegation of defamation. And paragraph 35 references only that letter which says we had a hearing, you're being fired for violating the policy, and that's all it says. And so while there are many other allegations in things like unemployment and memorandum in the file and that sort of thing, the only live allegation for defamation is what you have which is in that letter. And so again there's the question whether the course of the case is limiting that issue about whether the complaint language is limited to paragraph 35 and therefore limiting the defamation claim. I'm going to say it's federal. I'm going to say we follow Iqbal and Twombly because it's a procedural issue that the federal courts need to decide even in a case like this where you have a supplemental state law claim. So the pleading requirements would be determined by federal law whether or not once pled it amounts to a claim or as found in this case privilege because there was a duty and interest in the chief in issuing this letter which he asked for. He asked for a letter. And that's what was in the letter. That there is a common law privilege that protects the chief in writing I believe that you violated the local policy. With the other items that I mentioned that were in the record the chief was certainly justified in saying the other things that he said if in fact federal law allows those to be pled and argued at this point. Was there ever an amended complaint? There was never an amended complaint. Thank you. Thank you. Subject to your questions. Thank you. Thank you your honors. I'll try to briefly run through our rebuttal points. At the district court level the city never argued that the pre-termination due process violations were unpled. Only the individuals argue it. The city acts like it's clear  position on appeal but they never even took that argument before the district court. Iqbal and Twombly does not change the Bornhorst Cummings rules about ambiguity. This case was filed after Iqbal and Twombly. They had every right to file a rule 12 motion. They could have filed a motion for a more definite statement if they were confused about the basis. They could have filed a motion to dismiss if the allegations were insufficiently pled under Iqbal and Twombly. I thought under defamation law that there was a requirement that there be a specific indication of the defamatory  so that a defendant could respond. Am I not remembering the defamation law? I think that's generally correct but the way to deal with that would have been for the defendants to file a rule 12 motion in response to defamation being alleged in the complaint. You just need to send a collect telegram and then they should file a motion to see what you're really after. I mean I think that's clearly what motion for more definite statement Well it is in a certain sense but if you fail totally to put  But there's no argument that defamation was unpled here. Defamation is specifically asserted as a cause of action. Yeah but the defamation claim is shall we say minimal? It is minimal indeed. I will say though that it's not based on the November 5th letter. It's based on the November 2nd termination memo. That's clear from paragraph 35 of the complaint. It specifically refers to the November 2nd memorandum. I think that's paragraph 35. Yeah 35 refers to the November 2nd. So it's not the November 5th. It's not the November 5th. It's the November 2nd memo. The November 2nd memo is where Chief Taylor says to Mr. Lane that he has no legitimate basis to assert that he created a hostile work environment and he had no legitimate basis to assert that he created a hostile work environment. He had that information but he didn't investigate it. He testified that he didn't investigate it because he was terminating Mr. Lane solely on the basis of the offensive images. So I said to him but there are two sides of every story. He agrees and I said wouldn't you need to do an investigation before you could find claims like that or substantiate it. He said yes. I said did you do such an investigation? No. You had no legitimate basis to conclude that he created a hostile work environment and he agreed. He asserted the fact that Paul created a hostile work environment and he agreed to do an investigation before he could find claims like that. And I said wouldn't you need to do an investigation before you could find claims like that?